Taylor, J.
delivered the opinion of himself and Macay, J.
(Williams, J. being absent, from sickness)
as follows.
It is found by the special verdict that in the year 1782, upon the death of Mary Lewis, widow of Charles Lewis, a division was made of the negroes bequeathed by Charles, and that those mentioned in the declaration were allotted to Frances Lewis, then a widow, who immediately took them into possession. That in May 1790, being so possessed, she intermarried with Thomas Hynes, the plaintiff, who likewise became possessed of the negroes, and that in October 1790, Frances, then Frances Hynes, died. It is further found that *47 in 1792, the plaintiff delivered the negroes to the defendants, but without prejudice to his right, and that in 1793, they refused to deliver them when demanded by him. So far the plaintiff's title is unattended with any difficulty.
But the defendants say that Charles Lewis, having bequeathed the ulterior remainder in these negroes, to his daughter Frances, during her coverture with Robert Lewis their testator; and the said Charles Lewis having also died during the coverture, the title became vested in Robert, immediately upon the assent of the executors, and of course transmissible to his representatives.
The question therefore for the opinion of the court is, whether Robert Lewis did become entitled to these negroes, without having reduced the same into his possession during the coverture? It may premised that, as negroes are considered by our law, personal property, and as that is governed by certain general rules, in regard to its division, succession, and the rights that men may hold in it, this species of it, in common with every other, must necessarily be obedient to the like principles. Whatever necessity there may be that this sort of property should be regulated in a manner peculiar to itself, or that questions concerning it should be determined with a view to the exigency of men’s affairs; yet it is obvious that such alterations, accommodated to the nature of the property and the circumstances of the country, can only be made by legislative authority. In the dis *48 cussion of legal rights, courts of law are bound to apply strict legal principles, and the hardship in a particular case must be overlooked, in the greater benefit resulting to the community, when certain known rules are made the test of men’s rights, instead of suffering them to fluctuate in the dangerous uncertainty of private speculation.
The rule of law which ascertains what property the husband acquires by marriage, is so clear and well settled, that no difficulty could arise from it in the present case; but the argument has turned upon the application of that rule to property circumstanced like the present. That rule declares that the personal property of the wife in possession becomes, by the marriage, absolutely vested in the husband; that the personal property of the wife in action does not vest in the husband, unless he reduces it into possession during the coverture. If he die without doing so, and the wife survives, it is absolutely hers; if she dies, he has no other method of deriving benefit from such property, than by taking out letters of administration; Co. Lit. 351, a. Hence it is important to ascertain the respective boundaries of what is termed property in possession, and property in action; especially, as it is argued for the defendant that choses in action, strictly speaking, must be confined to debts upon bond, contract, and the like; to damages for the non-payment of a debt, or to the specific debt itself; excluding by this definition, goods, plate, deeds and writings, as well as negroes.
*49 All personal property, is divided into things in possession, and things in action; the first corresponding with the jus in re, the latter with the jus ad rem, of the civil law. Things in possession, are used in contradistinction to such as are not in actual enjoyment; and which, to become so, must be recovered by suit, whether they consist of money or specific chattels. Thus it is said in 2 Blacks. 439. "Chattels personal or chores in possession, as money, jewels, &c.” consequently if this money, or these jewels, were not in possession, they would be chattels personal or choses in action: accordingly an action of debt was antiently brought to recover a specific chattel, as well as a certain sum of money; the only difference being, that the defendant was charged in one case with owing, in the other with detaining; and the action was equally maintainable, whether a chattel was bailed to a defendant, who refused to restore it, or whether a man had contracted to deliver a specific chattel; Gilbert’s action of debt, 400. The same division of chattels in possession, and chattels in action, is recognized in Roll. 342, and in 4 Rep. 65. It seems therefore, that where a person’s deeds or goods, and consequently negroes, are in the possession of another, and he can only be restored to them by suit, he has a chose in action, precisely to the same extent, as if his demand arose from a bond or promissory note.
The argument that these negroes were vested in Frances Lewis during the coverture, and were therefore transmissible to Robert’s representatives, *50 is fallacious; for money in the hands of a trustee for a seme covert, is vested in her; yet if the husband dies without disposing of it, it survives to her, 1 Vern, 161. Rent, that accrues during the coverture, upon a lease made by the husband and wife, of the wife’s land, is vested in her; yet she shall have it, if she survives her husband, 1 Roll. 350. Many interests may be vested in the wife, which nevertheless do not belong to the husband; to complete his title, there must be a vesting in possession, as well as in interest. In this respect, the subject bears some analogy to a case of real property, where a remainder in fee is limited to a seme covert after an estate for life: during the particular estate, it is vested in her and is transmissible to her heirs; but if the particular tenant survives the wife, the husband shall not be tenant by the curtesy for want of a seisin in fact.
All that vested in Frances, during the coverture, was an undivided eighth part of Charles Lewis's negroes, after the death of his widow: of what negroes, this part should consist, was not ascertained until the division, which took place after Robert's death; so that in fact, until that time, no specific negroes vested in Frances. She had a claim upon the residuum, which it is true, the widow of Charles Lewis could not defeat by any act of hers, and so far her right was vested; yet this is rather an equitable than a legal right, for the protection of which in a court of law, during the life of the widow, it would be difficult to devise *51 an adequate remedy. Considered as a trustee for Frances, she might have been compelled, in a Court of Equity, to deliver in an inventory of the property, whereby it might be secured against any disposition of hers, calculated to defeat the remainder; but no case has occurred where such a right as this, has been asserted in a court of law during the life of the first taker; 2 Fearne 46. Then, the claim of the defendants amounts to this, that the wife, during the coverture, became entitled to an equitable right in remainder, to an undivided eighth part of Charles Lewis’s estate: that the husband, their testator, neither did, nor could reduce the same into possession, during the coverture, and that he died without making any assignment of it, his wife surviving him. Now chattels of a mist nature, partly in possession and partly in action, which happen during the coverture, the wife shall have, if she survives; Co. Litt. 351. a. The law is the same, if she becomes entitled to a distributory share of an intestate’s estate, which, never having been reduced into possession by the husband, survives to the wife, Shower 25. The reason of these cases, would seem to apply with more effect to the present one, which is the claim of a mere possibility.
Some of the cases, which have been cited for the defendant, shall now be briefly noticed; and an attempt made to point out wherein they appear to us defective in their application. By the case of Cary versus Taylor, in 2 Vern. 302, it is to be *52 observed that nothing is decided. The question was, whether a distributory share, should be considered as an interest vested, so as to belong to the husband, though his wife dies before an actual distribution, and he dies without administering up on her effects; and for the administrator of the husband it was argued that it should be considered as a legacy assented to, and consequently vested in the husband, without administering to his wife. In this latter case, the husband survived the wife; a circumstance which rendered his claim to the distributory share subject to the operation of principles inapplicable to the present case. The husband has a prior right to administer upon his deceased wife’s effects, and is not compellable to distribute them, as other administrators are, but is entitled to the wife’s choses in action, when recovered, for his own benefit. This was declared to be the law by the Stat. 29th. Car. 2, although, before that time doubts were entertained respecting it. Now, as the right to administer follows the right to the property, it is of course transmissible to the husband’s next of kin, and the administrator de bonis non of the wife is considered as a trustee to him; Co. Litt. 351. And in conformity to this rule, the consequences that respectively follow, from the husband’s surviving the wife or otherwise, are exemplified, in the two cases of Fowke versus Leven, 1 Vern. 88. and Pheasant's case, 2 Vent. 340. But in the case under consideration, Frances Lewis, by surviving her husband, became entitled to her own choses in actions which *53 he had not reduced into possession. The case of Packer v. Windham, Finch’s Rep. is where money and jewels belonging to the wife were laid hold of by the court of chancery during the coverture as a caution or pledge, till the husband made a provision for his wife. The husband died first, and afterwards the wife without issue, and it was resolved that the money belonged to the husband. But that this decision was to conform to the established principle, that the wife’s choses in action should belong to the husband only when reduced by him into possession, is manifest from the reasoning of the court; for they consider that the money was always in the husband’s possession, and as only remaining in court, subject to the wife’s equitable claims. The only thing proved by the case of Molesworth versus Molesworth; 3 and 4 Brown's Rep. is, that where there is a devise to trustees to pay to one for life and then to pay a legacy to another, the latter is a vested legacy and transmissible. It may be vested and of course transmissible, but, to belong to the husband, it must, as has been observed, be vested in possession. The cases cited from 1 Atkyns, 458, and 1 Peere Will. 378, do not apply in a different manner from those already observed upon, except that by the first it is admitted that a legacy unreceived during the coverture, is a chose in action which the husband may recover and enjoy by administering to his wife.
Upon the whole, we are of opinion, from the consideration we have been able to bellow on this *54 case, that the plaintiff is entitled to recover. But as Judge Williams, who is now absent by reason of sickness, does not coincide with us, and as it is a case of great concern to the parties, upon the points of which we are not aware that any determination has taken place; we think it better that the judgment should be postponed to the next term, in order that a case which is likely to settle an important rule of property, may be decided with all the advantage it can derive from a more delibrate examination.